IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAROL MASTERSON,<br><br>　　　　　　　　　Plaintiff,<br>v.<br>NATIONSTAR MORTGAGE, LLC., et. al.,<br>　　　　　　　　　Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:18-cv-00196-RJS-DBP<br>District Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

　　　　District Judge Shelby referred this matter to Magistrate Judge Pead pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 2.)  The matter is before the court on cross-motions for summary judgment: Defendants' *Motion for Summary Judgment* ("Defendants' Motion") and *Plaintiff's Motion for Summary Judgment Pursuant to Federal Rules of Civil Procedure 56(a)* ("Plaintiff's Motion").  (ECF Nos. 19, 25.)  Additionally, Defendants filed a *Motion to Strike Plaintiff's Amended/Corrected Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment* ("Motion to Strike") (ECF No. 33) and Plaintiff filed a *Motion for Leave to File Sur-Reply* ("Motion for Sur-Reply") (ECF No. 34).  Briefing has concluded.  The court has carefully reviewed the moving papers submitted by the parties.  Pursuant to local rule DUCivR 7-1(f), oral argument is unnecessary and the court will determine the motions on the basis of the written papers.

　　　　For the reasons discussed below, the court recommends granting Defendants' Motion, denying Plaintiff's Motion, denying Defendants' Motion to Strike, and denying as moot Plaintiff's Motion for Sur-Reply.

**FACTS**

On December 15, 2006, Plaintiff received a loan in the amount of $1,402,000.00 from First Magnus Financial Corporation ("FMFC") to purchase a home located in Park City, Utah. (Plaintiff's First Amended Complaint "Am. Compl.", ECF No. 16 at 9.) Plaintiff's loan with FMFC was secured by a Deed of Trust ("DOT") and was signed and dated by Plaintiff on December 15, 2006. *See Id.* at Exhibit No. 1. Incorporated into the DOT was an Adjustable Rage Rider indicating that the interest rate and monthly payment could change on the first day of January, 2012. *See Id.* The DOT and incorporated documents were recorded with the Summit County Recorder's Office. *See* Am. Compl. at 9.

The DOT identifies the Mortgage Electronic Registration Systems, Inc. ("MERS") as a "separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." *Id.* at Exhibit No. 1. Furthermore, MERS was nominated as the "beneficiary" under the DOT solely as nominee for Lender and Lender's successors and assigns and the successors and assigns of MERS. *Id.* In the DOT, Plaintiff, as the borrower, confirmed that she understood and agreed "that MERS holds only legal title to the interest granted" in the DOT "but, if necessary, to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell" the home. *Id.*

Under the terms of the loan, the loan along with the DOT could be sold one or more times without prior notice to Plaintiff. *See Id.* However, if there was a change of the loan servicer, Plaintiff was to be notified consistent with the Real Estate Settlement Procedures Act ("RESPA"). *See Id.* Consistent with the terms of the DOT, beneficial interest and servicing rights of Plaintiff's loan was transferred a number of times between 2007 and 2012. *See* Am.

Compl. at Exhibit No. 5 ("Milestone Report") at 15-16.  For instance, Deutsche Bank National Trust Company Americas as Trustee ("Deutsche Bank"), obtained the beneficial interest in May of 2008.  *See Id*.  Servicing rights transferred from FMFC to Residential Funding Company to Aurora Loan Services ("Aurora") in 2007 and 2008.  *See* Am. Compl. at 9 and Exhibit 5.  According to Plaintiff, Aurora recorded a Substitution of Trustee with the Summit County Recorder's Office in 2007, pursuant to the terms of the DOT.  *See Id*. at Exhibit 2.

In January of 2010, Plaintiff received a Notice of Default and then a Notice of Rescission that were recorded with the Summit County Recorder's Office.  *See* Am. Compl. at 9.  After foreclosure was averted, on July 2, 2012, Aurora transferred seasoned servicing rights of Plaintiff's loan to Nationstar Mortgage LLC ("Nationstar"), now doing business as Mr. Cooper.  *See* Milestone Report at 15-16.  Within 15 days of the transfer of servicing rights, Nationstar notified Plaintiff that it was now servicing the loan.  *See* Am. Compl. at Exhibit 5; *see also* Defendants' Motion at Exhibit 5.

Consistent with the undisputed document before the court, the beneficial rights of the loan were transferred as follows:  from FMFC to Residential Funding Company, from Residential Funding Company to Deutsche Bank.  *See* Milestone Report, Am. Compl. at Exhibit 5.  Servicing rights for the loan transferred as follows: FMFC to Residential Funding Company, from Residential Funding Company to Aurora, and from Aurora to Nationstar.  *See Id*.

Accepting Plaintiff's facts as true, she sent a Qualified Written Request ("QWR"), pursuant to RESPA, to Nationstar on August 9, 2012.  *See* Am. Compl. at 11.  Defendant Nationstar concedes, and Plaintiff agrees, that Nationstar promptly responded to her QWR.  *See Id*.

## DISCUSSION

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Herrera v. Santa Fe Pub. Sch.,* 956 F. Supp. 2d 1191, 1221 (D. N.M. 2013) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991)); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp* at 324; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

Therefore, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); see also *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal citations omitted)). Rule 56(c)(1) provides: "A party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1).

I. Declaratory Relief Claims

Counts one, three, four and five of the Am. Compl. request declaratory relief primarily

asserting that the designation of MERS as agent and beneficiary of the DOT renders the DOT a nullity and Defendants lack proper assignments of the loan and therefore have no beneficial interest in the loan.  *See* Am. Compl. at 16-23.  Plaintiff's claim for declaratory judgment resting on these theories have been rejected by this District and Utah State Courts.  *See Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 263 P.3d 397, 403, *reh'g denied* (August 10, 2011), *cert denied*, 268 P.3d 192 (Utah 2011); *see also Mitchell v. ReconTrust Co. NA,* 373 P.3d 189, 198, *reh'g denied* (June 29, 2016); *Wade v. Meridias Capital, Inc., et. al.,* 2011 WL 997161, at *2 (D. Utah Mar. 17, 2011).

When considering state law claims, federal courts "apply state law with the objective of obtaining the result that would be reached in state court."  *Ace Fire Underwriters Ins. Co. v. Romero,* 831 F.3d 1285, 1289 (10th Cir. 2016) (internal citations omitted).  A recorded deed of trust is presumed valid.  *See* Utah Code § 57-4a-4(1).  Plaintiff does not dispute the DOT was recorded with the Summit County Recorder's Office.  In addition, Plaintiff does not dispute that beneficial interests in the loan and servicing rights of the loan were transferred from FMFC to other entities.  "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor."  Utah Code Annotated § 57–1–35.  The statute does not provide for exceptions, nor has Plaintiff cited to any case law or statute that says that such an exception exists, even when viewing her pleadings liberally.

By law, each successor to the loan also receives the benefit of the security. Under the plain terms of the DOT, which Plaintiff signed, whoever holds the loan is entitled to enforce the deed of trust.  Furthermore, Utah law does not prevent MERS from acting as nominee for the lender and those successors and assigns, as permitted by the terms of the DOT to which Plaintiff agreed.  *See Burnett v. Mortgage Elec. Registration Sys., Inc.,* 706 F.3d 1231, 1237 (10th Cir.

2013). Consequently, the DOT is valid and, for these reasons, Plaintiff's claims for declaratory relief and violations of the Truth in Lending Act fail.

As for claim two, Plaintiff asserts she is entitled to "discover what the true loan balance [is] still owing minus any illegal costs, fees and charges." Am. Compl. at 21. "[A]n accounting is a remedy rather than an independent cause of action." *USAA Mut. Funds Tr. v. Jordanelle Special Serv. Dist.*, 2015 WL 8489959, at *9 (D. Utah Dec. 9, 2015)(citing *Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F. Supp. 2d 1181, 1193 (D. Utah 2002)). Therefore, a claim for an accounting cannot survive as a stand-alone cause of action. In light of the failure of Plaintiff's other claims for declaratory relief, her claim for an accounting likewise fails.

II. RESPA Claims

Plaintiff's sixth and seventh causes of action relate to purported violations of RESPA[1]. In relevant part, RESPA requires that each loan servicer for "any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer" of the servicing rights of the loan. 12 U.S.C. § 2605 (b)(1). Notice to the borrower must be made within 30 days of the change in loan service providers. *See* Id. at (b)(2)(A) and (B). According to the Milestone Report, Nationstar received seasoned servicing rights on July 2, 2012. *See* Am. Compl. at Exhibit 5. Within 15 days of the servicing change, Nationstar sent notice to Plaintiff. *See* Am. Compl. at Exhibit 5.

Independently, when a loan service provider receives a QWR, RESPA requires the loan servicer to respond to the written request within 30 days. *See* 12 U.S.C. § 2605 (e). There is no dispute of fact that Plaintiff sent a QWR to Nationstar on August 9, 2012. According to Plaintiff,

---

[1] Plaintiff alleges Aurora failed to respond to her QWR as required by RESPA. *See* Am. Compl. at 10. However, Plaintiff has failed to name Aurora as a party to this action. As such, any claims against Aurora are beyond the reach of this court.

Nationstar "promptly" responded to her August 9th QWR on August 24th, at least 10 business days before the expiration of the 30-day requirement. *See* Am. Compl. at 11. It is uncontroverted that Nationstar, as the loan servicer, complied with the requirements RESPA. Consequently, there are no genuine issue of material fact related to a RESPA claim and Plaintiff's sixth and seventh causes of actions are without merit.

    III.    Negligent Misrepresentation and Deceit Claim

Plaintiff's eight cause of action alleges negligent misrepresentation and deceit. While it is hard to decipher, it appears the basis for the claims is Defendants' representation that the DOT was valid in order to induce Plaintiff to make the agreed-upon payments on the loan. *See* Am. Compl. at 28. Plaintiff rests her claim for negligent misrepresentation on the underlying belief that because the DOT identifies MERS as both nominee for the lender and beneficiary, then it is void.

There are two issues with Plaintiff's negligent misrepresentation claim. First, under Utah law a claim for negligent misrepresentation is subject to a four year statute of limitations. *DOIT, Inc. v. Touche, Ross & Co,* 936 P.2d 835 (Utah 1996). Second, Plaintiff's claim fails as a matter of law because she has not established that the Defendants owed her an independent duty of care.

In essence, Plaintiff asserts, back in 2006, she was misled by Defendants to believe the DOT, which was recorded that same year, was valid. However, because Plaintiff was purportedly damaged in 2006, she needed to file suit by December of 2010 in order to comply with the statute of limitations period. Even if she did not discovery the alleged defects with the DOT until 2010, when she received the Notice of Default, the period had already run by the time she filed this cause of action. Instead, Plaintiff commenced this action in 2018, years after the limitations period had run.

In the alternative, even if Plaintiff had timely raised the issue, her claim still fails as a matter of law.  In order to have a successful cause of action for negligent misrepresentation, the plaintiff has the burden to prove the defendant owed an independent duty of care that is separate from a contractual obligation. *See Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing,* 221 P.3d 234 (Utah 2009).  The Am. Compl. is bereft of any alleged facts regarding an independent duty of care.  Without such details, there is an absence of evidence to support Plaintiff's eight cause of action and therefore, summary judgment is warranted.

IV.     Intentional Infliction of Emotional Distress Claim ("IIED")

Defendants argue Plaintiff's IIED claim fails for two reasons: (1) Plaintiff failed to plead the necessary elements and (2) even if the pleading requirement had been satisfied, the claim is barred.  *See* Defendants' Motion at 8.  The court agrees.

To succeed on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality. *See Franco v. Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 206 (Utah 2001).  To be considered outrageous, "the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Franco,* 21 P.3d at 206 (internal quotations omitted) (quoting 86 C.J.S. *Torts* § 70, at 722).  Conduct "is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because

it is illegal." *Id.* (quoting 86 C.J.S. *Torts* § 70, at 722–23). Independent of the conduct, IIED claims are subject to a four-year statute of limitations. *See* Utah Code § 78-12-25(3).

Because statute of limitations questions are a threshold issue, the court begins here. Under Utah law, IIED claims must be brought within four-years of the events giving rise to the action. *See Id.*; *see also Hatch v. Davis*, 102 P.3d 774, 784 (Utah Ct. App. 2004). Specifically, "[a] tort cause of action accrues when all its elements come into being and the claim is actionable." *Id.*

Plaintiff claims she suffered emotionally as a result of Defendants' demands that she bring her loan current or face losing her home. *See* Am. Compl. at 29. Taking Plaintiff's version of the facts as true, foreclosure proceedings commenced in January of 2010 when the Notice of Default was recorded in Summit County. *See* Am. Compl. at 9. That same month, a Notice of Rescission was recorded. According to Plaintiff, foreclosure proceedings have yet to be renewed. As a result, Plaintiff needed to file her IIED claim by the latest in 2014. Plaintiff did not do this and waited until 2018 to bring forth her claim. Consequently, Plaintiff's ninth cause of action for IIED claim is barred.

V. Plaintiff's Motion

Plaintiff's Motion does not establish genuine issues of material facts that are in dispute. Plaintiff asserts she timely and properly served requests for admission on Defendants and because Defendants failed to timely respond to those requests, she has proven the DOT is void. Defendants claim they did not receive Plaintiff's discovery requests. Defendants communicated as much to Plaintiff in writing via email and asked her to resend those requests to them via email. Plaintiff did not.

Even if Plaintiff had properly and timely served her discovery requests, it would not

9

change the outcome because Plaintiff's Motion merely raises arguments about the DOT that have been rejected by this District and the Utah State Courts. Therefore, Plaintiff's Motion must be denied.

## RECOMMENDATIONS

For the reasons discussed above, this Court **RECOMMENDS** the District Court:

1. **GRANT** Defendants' Motion. (ECF No. 19.)

2. **DENY** Plaintiff's Motion. (ECF No. 25.)

3. **DENY** Defendants' Motion to Strike. (ECF No. 33.)

4. **FIND MOOT** Plaintiff's Motion to File a Sur-reply. (ECF No. 34.)

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* Fed. R. Civ. P. 72(b)(2). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 14th day of August, 2019.

BY THE COURT:

Dustin B. Pead
United States Magistrate Judge