IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAROL MASTERSON,<br><br>Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC, et al.,<br><br>Defendants. | **ORDER OVERRULING OBJECTION AND DIMISSING CASE WITH PREJUDICE**<br><br>Case No. 2:18-cv-196-RJS-DBP<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Pro se Plaintiff Carol Masterson initiated this action on March 2, 2018.[1] The undersigned referred the case to Magistrate Judge Dustin B. Pead under 28 U.S.C. § 636(b)(1)(B).[2] On August 14, 2019, Judge Pead issued a Report and Recommendation.[3] Judge Pead recommends the court (1) grant Defendants' Motion for Summary Judgment;[4] (2) deny Masterson's Motion for Summary Judgment;[5] (3) deny Defendants' Motion to Strike;[6] and (4) find moot Masterson's Motion to File a Sur-reply.[7]

---

[1] Dkt. 1.

[2] Dkt. 2.

[3] Dkt. 37.

[4] Dkt. 19.

[5] Dkt. 25.

[6] Dkt. 33.

[7] Dkt. 34.

1

Masterson timely filed specific objections to Judge Pead's Report and Recommendation under Federal Rule of Civil Procedure 72(b)(2).[8] The court begins by reviewing de novo the portions of Judge Pead's Report and Recommendation to which Masterson properly objected.[9] The court reviews the remainder of Judge Pead's disposition for clear error.[10] For the reasons explained below, Masterson's objection is OVERRULED. The Report and Recommendation is received and adopted in its entirety.

**ANALYSIS**

Masterson raises five objections to Judge Pead's Report and Recommendation.[11] First, Masterson disputes Judge Pead's statement that "[a] recorded deed of trust is presumed valid."[12] She argues that such a presumption of validity is "flawed on face value" because the website of the county recorder that recorded the deed of trust contains a disclaimer stating, "The Recorder's Office makes no warranty or guarantee concerning the accuracy or reliability of the content at this site or at other sites to which we link."[13] But the disclaimer does not warn of potential defects in the validity of deeds listed on its website. Rather, the disclaimer warns of potential defects in the validity of "the content at *this* [web]site." In other words, the disclaimer informs website visitors that discrepancies may exist between the website's information and what is listed

---

[8] Dkt. 38. Masterson asserts that Judge Pead erred "in recommending that Plaintiff's complaint be dismissed." *Id.* at 2. Judge Pead does not recommend, however, that Masterson's complaint be dismissed. Rather, as noted above, he recommends granting Defs.' MSJ and denying Masterson's MSJ. Dkt. 37 at 10. Thus, Judge Pead properly evaluated the parties' briefing under Fed. R. Civ. P. 56 as opposed to Fed R. Civ. P. 12(b)(6).

[9] Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court.") (citation omitted).

[10] *See* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879).

[11] Dkt. 38 at 2–5.

[12] Dkt. 37 at 5 (citing Utah Code § 57-4a-4(1)).

[13] Dkt. 38 at 2.

on an actual deed. In any event, a county recorder's website disclaimer has no bearing on the presumption under Utah law that a recorded deed of trust is valid.[14]

Second, Masterson argues Judge Pead erred by concluding that the beneficial interests in the loan at issue and servicing rights of the loan were transferred from First Magnus Financial Corporation to other entities.[15] Masterson appears to allege that Judge Pead's conclusion was based on inadequate evidence.[16] But Masterson herself acknowledges that the beneficial interests in the loan and servicing rights of the loan were transferred from First Magnus.[17] Indeed, Masterson's exhibit tracks each transfer of both the beneficial interest and the servicing rights.[18] This exhibit sufficiently establishes that the beneficial interests in the loan and the servicing rights of the loan were transferred several times from First Magnus to other entities.[19]

Third, Masterson objects to Judge Pead's conclusion that Defendant Nationstar provided ample notice of the change in servicing rights of the loan as the Real Estate Settlement Procedures Act (RESPA) requires.[20] Masterson's objection appears to be that Defendants did not provide adequate evidence.[21] Under RESPA, a "transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer"[22] within 15 days of "the effective date of transfer of the

---

[14] *See* Utah Code § 57-4a-4(1).

[15] Dkt. 38 at 2–3.

[16] *Id.* at 3 ("[J]ust because Defendants' reply to Plaintiff's Qualified Written Request states that beneficial interests in the loan and servicing rights of the loan were transferred doesn't make it FACT[.]").

[17] Dkt. 16 (Am. Compl.) at ¶¶ 56–57.

[18] *Id.*, Ex. 5 at 15–16.

[19] *See id.*

[20] Dkt. 37 at 6.

[21] Dkt. 38 at 3 ("[J]ust because a Defendant[] replied in a timely manner to Plaintiff's Qualified Written Request [does not mean] that there is now evidence that Defendant[] noticed the borrower . . . .").

[22] 12 U.S.C. § 2605(c)(1).

servicing of the mortgage loan."[23] The effective date of transfer was July 2, 2012.[24] Nationstar sent Masterson notice of the transfer of servicing rights 13 days later on July 15, 2012.[25] The court concludes that Nationstar's July 15, 2012, letter provides sufficient evidence that Nationstar complied with its notification obligations under RESPA.

Finally, Masterson's fourth and fifth objections concern her Motion for Summary Judgment. Masterson argues Judge Pead erred by denying her Motion because Defendants never responded to requests for admissions she allegedly served on them.[26] Masterson argues the requests for admissions should therefore be deemed admitted.[27] Defendants, however, maintain they never received any requests for admissions.[28] Because the court concludes Defendants withdrew any potential admission, the court agrees that Masterson's Motion does not present any genuine issues of material facts that are in dispute.[29]

---

[23] *Id.* § 2605(c)(2)(A).

[24] Dkt. 16, Ex. 5 at 15.

[25] *Id.* at 4 ("You are hereby notified that the servicing of your mortgage loan . . . is being assigned, sold or transferred from AURORA LOAN SERVICES LLC to Nationstar Mortgage LLC[.]").

[26] Dkt. 38 at 4–5.

[27] *See id.*

[28] For the purposes of this analysis, the court assumes both parties are telling the truth. That is, that Masterson mailed the requests for admission to Akerman's Utah office, but Defendants never received them. Both parties' claims are supported by sworn statements. *See* Dkt. 26 (Tweed Aff.) at 1; Dkt. 27 (Defs.' Opp'n), Ex. B. Defendants have presented several reasons why the court should not trust that Masterson ever mailed her requests, principally that (1) she provided proof of mailing for her Motion for Summary Judgment but fails to provide similar proof of mailing here, and (2) Robert Tweed is not a credible witness. Dkt. 27 at 7–9. Defendants support their claim that Tweed lacks credibility by exhibiting a July 5, 2018, ruling from the Financial Industry Regulatory Authority that concluded Tweed made false and misleading statements to customers to induce them to invest in his hedge fund. *See id.* at 9. However, credibility determinations are not appropriate at the summary judgment stage. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1036 (10th Cir. 1978) ("[S]ummary judgment is not proper where an issue turns on credibility.") (citation omitted).

[29] Judge Pead declined to consider this issue in depth, concluding in his Report and Recommendation "[e]ven if Plaintiff properly and timely served her discovery requests, it would not change the outcome because Plaintiff's Motion [for Summary Judgment] merely raises arguments about the [Deed] that have been rejected by this District and Utah State Courts." Dkt. 37 at 9–10. While it is true that many of the arguments raised in Masterson's MSJ would likely be unavailing, the court is not convinced the outcome of the case would have been unaffected had the court deemed admitted some of Masterson's requests for admission.

Before turning to the core of Masterson's fourth and fifth objections, the court notes that a conflict between Masterson's Motion for Summary Judgment and a supporting affidavit from her husband, Robert Tweed, creates some confusion in the basic chronology related to the requests for admission.[30] Masterson asserts that Tweed mailed three sets of requests for admission—one each for Defendant Nationstar Mortgage, Defendant Deutsche Bank Trust Company Americas, and Defendant MERS, Inc.—to Akerman, LLP's Salt Lake City, Utah, office on July 2, 2018.[31] But Tweed mailed only two of the three sets of requests—those intended for Defendants Deutsche Bank and MERS, Inc.—on that date.[32] Tweed did not mail the set of requests directed to Defendant Nationstar until October 19, 2018.[33]

On October 8, 2018, Masterson emailed Defendants' counsel, stating she had not received "a single response" to her discovery requests, including her requests for admission.[34] Masterson also informed them she intended to "file [her] own MSJ and cite [Defendants'] failure to reply" to her requests for admission as evidence.[35] Defendants' counsel responded the very next day on October 9, 2018, stating they had no record of ever receiving the requests.[36] Defendants' counsel

---

[30] Masterson filed Tweed's affidavit and accompanying exhibits contemporaneously with her Motion for Summary Judgment. *See* Dkt. 25–26.

[31] Dkt. 25 at 4. Each set of requests appears to be identical. *See* Dkt. 26, Exs. 3–5. Indeed, while the caption on the first page of each set of requests identifies a different defendant, the initial paragraph of each set directs the requests to Deutsche Bank. *Id.* ("Pursuant to Federal Rule of Civil Procedure ("FRCP") 36, Plaintiff Carol Masterson, hereby request [sic] that Defendant Deutsche Bank . . . admit, deny, or state in detail why they cannot admit or deny, these Requests for Admissions").

[32] *See* Dkt. 26, Ex. 4 at 9 ("Certificate of Service"); *id.*, Ex. 5 at 9 ("Certificate of Service"). The affidavit also states the documents were mailed to 170 South Main Street, Suite 725, Salt Lake City, Utah, 84101. This address matches the address listed for Defendants' counsel in the court's electronic case filing system.

[33] *Id.*, Ex. 3 at 9 ("Certificate of Service").

[34] Dkt. 27, Ex. A at 1.

[35] *Id.*

[36] *Id.*

also asked Masterson where she sent the requests and whether she had any proof of mailing.[37] Masterson never responded to Defendants' counsel's email, though Tweed attests in his affidavit he mailed a set of requests to Defendant Nationstar Mortgage ten days later, on October 19, 2018.[38] Masterson filed a Motion for Summary Judgment two months later on December 26, 2018, arguing, among other things, that the requests for admission should be deemed admitted.[39]

Defendants filed an Opposition to Masterson's Motion for Summary Judgment on January 16, 2019, in which they maintain they never received any of Masterson's requests for admission[40] and provide a sworn declaration to that effect.[41] Defendants also deny in their Opposition each of Masterson's requests for admission.[42]

Federal Rule of Civil Procedure 36(a)(3) states that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."[43] The rule does not explicitly address whether its effect should be tempered where, as here, one party claims it served requests for admission, while the opposing party maintains that it

---

[37] *Id.*

[38] *See* Dkt. 26, Ex. 3 at 9 ("Certificate of Service").

[39] Dkt. 25.

[40] Dkt. 27 at 2.

[41] *See id.*, Ex. B.

[42] *See id.* at 2—5.

[43] Defendants argue this rule has no application "absent proper service" and that Masterson never served them. Dkt. 39 (Defs.' Resp. to Pl.'s Obj. to R. & R.) at 3. But their argument assumes that because they never received Masterson's discovery requests, service was improper. That is not the case. When papers are served by mail, service is "complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C); *see also White v. Arnold*, No. 91–6114, 1991 WL 268873 at *1 (Dec. 11, 1991) (quoting Rule 5(b) for its holding that service was completed despite plaintiff's claim that he never received defendant's answer).

never received the requests. Further, the few courts that have ruled on this issue disagree on how the rule applies to these facts.[44]

Many factors weigh heavily against deeming admitted Masterson's requests for admission. As an initial matter, "[a] party may not request an admission of a legal conclusion under Rule 36."[45] Thus, many of Masterson's requests cannot be admitted because they seek admissions of legal conclusions.[46] And although Masterson technically was under no duty to respond to Defendants' email informing Masterson that they never received her requests for admission, other courts have viewed disapprovingly Masterson's tactic of using a motion for summary judgment to resolve the dispute rather than conferring with the opposing party.[47]

In any event, the court need not decide whether Rule 36(a)(3) requires that Masterson's requests be deemed admitted on these facts. The Tenth Circuit has noted that "courts are

---

[44] *Compare Ark-Tenn Distrib. Corp. v. Breidt*, 110 F. Supp. 644, 646 (D.N.J. 1953), *aff'd*, 209 F.2d 359 (3d Cir. 1954) ("Simple justice demands that a person who has no knowledge of a request for admission should not be held liable for his failure to deny."), *with J.D. Pharm. Distribs., Inc. v. Save-On Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1208 (11th Cir. 1990) (citing *In re Mack*, 330 F. Supp. 737, 738 (S.D. Tex. 1970)) ("Under Rule 5(b), Fed. R. Civ. P., adequate constructive service may be made by mailing papers to a party's last known address."), *and Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa. 1975) (deeming admitted requests for admission even though they were never received where the requests were sent to the receiving party's last known address because "[a]ll parties have an obligation to keep the Court advised of a current address for the service of papers").

[45] *In re Tobkin*, 578 F. App'x 962, 964 (11th Cir. 2014); *see also Phillip M. Adams & Assocs., LLC v. Dell, Inc.*, No. 1:05-CV-64, 2007 WL 128962 at *1 (D. Utah Jan. 11, 2007) (acknowledging requests for admission of issues of law are "not proper"); Fed. R. Civ. P. 36(a)(3) advisory committee's note to 1970 amendment ("The amended provision does not authorize request for admission of law unrelated to the facts of the case.").

[46] *See, e.g.*, Dkt. 26, Ex. 3, Request for Admission No. 1 ("Admit that the Deed of Trust is void ab initio as the rights, powers and authorities are given to both the purported beneficiary and the Trustee under the Deed of Trust."); Requests for Admission Nos. 12–15, 17–18 (seeking admissions that certain of Defendants' actions were "ultra vires").

[47] *See Christmas v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 435 (E.D.N.C. 2014). In *Christmas*, the plaintiff submitted 108 requests for admissions. *Id.* at 446. Defendant erroneously believed that the parties had agreed to a limit on the number of requests and stopped responding after the twenty-fifth request. *Id.* Plaintiff waited until the summary judgment briefing to argue that the 83 unanswered requests should be deemed admitted. The court rejected this approach, explaining: "Instead of conferring with Nationwide in an attempt to resolve the issue [or] filing a motion to compel responses, counsel waited until the summary judgment briefing to argue that each of these eighty-three responses should be deemed admitted. The court would only consider deeming these requests for admission admitted if there was some record evidence of the parties' good faith attempts to resolve this issue during discovery and, failing that, a motion to compel responses. *Waiting until the summary judgment briefing to argue that the [] requests should be deemed admitted is gamesmanship.*" *Id.* (emphasis added).

particularly responsive to allowing late answers to requests for admission when summary judgment is involved."[48] Further, "a response to a motion for summary judgment arguing in part that the opposing party should not be held to its admissions can constitute a Rule 36(b) motion to withdraw those admissions."[49] A district court may permit withdrawal of admissions "[1] when the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him or her in maintaining his action or defense on the merits."[50]

In *Bergemann*, the court faced a similar situation as the facts present here: the plaintiff represented the requests for admission had been mailed, but the defendant claimed it never received them.[51] The court noted that the defendant included an affidavit with its opposition to the plaintiff's motion for summary judgment confirming non-receipt of the requests, which effectively acted as a motion to withdraw the admissions.[52] The court found no prejudice to the plaintiff in part because the plaintiff "clearly knew defendants challenged" the subject matter of the requests.[53]

Here, the court similarly construes Defendants' Opposition to Masterson's Motion for Summary Judgment as a motion to withdraw any possible admission. Like the defendants in *Bergemann*, Defendants included a sworn statement that they never received Masterson's requests.[54] Defendants also denied each of Masterson's requests for admission in their

---

[48] *In re Durability, Inc.*, 212 F.3d 551, 556 (10th Cir. 2000) (quotation marks and citation omitted).

[49] *Id.* at 556–57 (citing *Bergemann v. United States*, 820 F.2d 1117, 1120–21 (10th Cir.1987)).

[50] *Bergemann*, 820 F.2d at 1120 (quoting Fed. R. Civ. P. 36(b)).

[51] *Id.*

[52] *Id.* at 1120–21.

[53] *Id.* at 1121.

[54] Dkt. 27, Ex. B.

opposition brief.[55]  Moreover, nothing in Masterson's Reply to Defendants' Opposition suggests she would be prejudiced by the court permitting withdrawal of Defendants' admissions.[56]  Nor has the court identified any prejudice.  Masterson undoubtedly knew Defendants' challenged the subject matter of her admissions because they filed their Motion for Summary Judgment well before Masterson filed hers.  Accordingly, the court holds that, regardless of whether Masterson's requests should have been deemed admitted, Defendants effectively withdrew any such admissions.[57]

Having carefully reviewed the remainder of the Report and Recommendation, the court finds no clear error.

## CONCLUSION

For the foregoing reasons, Masterson's Objection[58] to Judge Pead's Report and Recommendation[59] is OVERRULED.  The Report and Recommendation is received and adopted in its entirety.  The action is dismissed with prejudice, and the Clerk of Court is directed to close the case.

SO ORDERED this 30th day of September 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[55] *See id.* at 2–5.

[56] "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required." *Bergemann*, 820 F.2d at 1121.

[57] The court notes that it agrees with the court's comment in *In re Durability* that "[c]learly, the better practice would have been for the [defendant] to move the court for leave to withdraw the prior stipulations."  212 F.3d at 557.

[58] Dkt. 38.

[59] Dkt. 37.